IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

EDUARDO HOLGUIN,              §
    Plaintiff,                §
                      §
v.                            §          EP-21-CV-67-DB
                      §
YSLETA DEL SUR PUEBLO, et al., §
    Defendants.               §

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendants Ysleta Del Sur Pueblo, Tigua Tribal Police Department, Erika Avila, Raul Candelaria, and Officers John and Jane Doe's (collectively, "Defendants") "Motion to Dismiss Plaintiff's Original Petition" ("Motion to Dismiss"), ECF No. 4, filed on March 22, 2021.  Plaintiff Eduardo Holguin ("Mr. Holguin") filed a Response, ECF No. 12, on May 8, 2021.  Defendants filed a Reply, ECF No. 15, on May 17, 2021, and Mr. Holguin filed a Surreply, ECF No. 18, on May 25, 2021.  After due consideration, the Court will grant the Motion to Dismiss.

## BACKGROUND

Mr. Holguin was "pulled over by the Tiguan Tribal Police Department . . . for an alleged traffic violation" on November 28, 2018.  Pl.'s Orig. Pet. 3–4, ECF No. 1-1.[1]  Upon being asked to identify himself, Mr. Holguin "with some colorful language . . . refused the TTPD [Tigua Tribal Police Department] demand" and stated "that [the TPPD] had no authority to perform a pretextual investigatory stop outside the reservation." Id. at 4–5.  Officers followed Mr. Holguin to his house, where they left a "Civil Infraction Citation." Id. at 5.  In subsequent

---

[1] Mr. Holguin initiated this suit in state court with a document labeled "Plaintiff's Original Petition." ECF No. 1-1. However, federal law refers to the document that initiates a suit as a "complaint." See, e.g., Fed. R. Civ. P. 12. Thus, while the document will be cited as "Pl.'s Orig. Pet.," this Opinion will refer generally to the "complaint."

weeks, Mr. Holguin received a summons for the Tribal Court of the Ysleta Del Sur Pueblo and, a few weeks later, notification that the Tribal Court had entered an order finding him "liable of violating a code or law of the [Ysleta Del Sur Pueblo]." *Id.* at 6.

On February 1, 2021, Mr. Holguin filed a suit in state court asserting that the actions of the Ysleta Del Sur Pueblo, its Tribal Court, its police department, and individual police officers involved in the traffic stop constituted multiple violations of 42 U.S.C. § 1983 ("§ 1983"). *See* Notice of Removal 1–2, ECF No. 1; Pl.'s Orig. Pet. 6–8, ECF No. 1-1. Defendants removed the case from state court to federal court. Notice of Removal, ECF No. 1. This Court, finding that it had subject-matter jurisdiction under 28 U.S.C. § 1331, denied Mr. Holguin's Motion to Remand, ECF No. 5. Mem. Op., ECF No. 9.

Now before the Court is Defendants' Motion to Dismiss, brought under Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)"). Mot. to Dismiss 1, ECF No. 4. In the Motion, Defendants offer myriad arguments for dismissal. *Id.* at 5–21. They argue that the Court cannot hear the case as it lacks subject-matter jurisdiction based on the sovereign immunity of the Ysleta Del Sur Pueblo, and they argue that the Court should not hear the case until Mr. Holguin exhausts tribal remedies. *Id.* at 5–11. They also argue that § 1983 provides a remedy for violations of rights committed under color of *state* rather that *tribal* law. *Id.* at 11–14. They argue that the suit is barred by the applicable statute of limitations. *Id.* at 14–16. Finally, they argue that Mr. Holguin's constitutional rights were not in fact violated. *Id.* at 17–21.

In his Response, Mr. Holguin argues that the tribal exhaustion doctrine is inapplicable because "the tribal court would not have civil authority over this dispute." *Id.* at 10. He also argues that the statute of limitations does not bar his suit because "all relevant statutes of

limitations were tolled through February 1, 2021 due to the COVID-19 state of emergency." *Id.*
at 13. Beyond a cursory statement that Defendants' "other defenses . . . are meritless," Mr.
Holguin does not address Defendants' other asserted grounds for dismissal. *Id.*

## LEGAL STANDARD

Defendants move to dismiss Mr. Holguin's Original Petition under Rule 12(b)(1)
and Rule 12(b)(6). Mot. to Dismiss 1, ECF No. 4.

### 1. Rule 12(b)(1)

Rule 12(b)(1) permits dismissal if a court lacks subject-matter jurisdiction. Fed.
R. Civ. P. 12(b)(1). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12
motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any
attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"Federal courts are courts of limited jurisdiction. They possess only that power
authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.
375, 377 (1994). A case is presumed to lie outside the scope of a federal court's subject matter
jurisdiction, and the burden of establishing otherwise rests with the party seeking to invoke the
court's jurisdiction. *Id.* "It is incumbent on all federal courts to dismiss an action whenever it
appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138
F.3d 144, 151 (5th Cir. 1998).

### 2. Rule 12(b)(6)

"When faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all
factual allegations in the complaint as true. We must also draw all reasonable inferences in the
plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal
citations omitted).

Rule 12(b)(6) permits dismissal if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"[A] complaint may simultaneously satisfy Rule 8's technical requirements but fail to state a claim under Rule 12(b)(6)." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bank of Abbeville & Tr. Co. v. Commonwealth Land Title Ins. Co.*, 201 Fed. App'x. 988, 990 (5th Cir. 2006) (unpublished)). "'Rule 8(a)(2) specifies the conditions of the *formal* adequacy of a pleading,' but '[i]t does not specify the conditions of its *substantive* adequacy, that is, its legal merit.'" *Id.* at 385–86 (quoting *Bank of Abbeville*, 201 Fed. App'x. at 990). Dismissal under 12(b)(6) is thus proper when "the plaintiff would not be entitled to relief under any set of facts or any possible theory that it could prove consistent with the complaint's allegations." *Id.* at 386 (quoting *Bank of Abbeville*, 201 Fed. App'x. at 990) (internal quotations omitted). In such a situation, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citing 5 Wright & Miller § 1216, at 233–234) (internal quotations and alterations omitted).

A complaint that meets the legal requirements of Rule 8 must also contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This "demands more than an unadorned . . . accusation." *Iqbal*, 556 U.S. at 678. A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of

4

action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotations and alterations omitted).

"A claim has facial plausibility when [a party] pleads factual content that allows the court to draw the reasonable inference that the [other side] is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Consistent with Rule 8(a)(2)'s requirement that the complaint "show" and not merely allege that a party is entitled to relief, the well-pleaded facts must do more than "permit the court to infer . . . the mere possibility of misconduct." *Id.* Thus, "conclusory statements are 'not entitled to the assumption of truth.'" *Williams-Boldware v. Denton Cty., Tex.*, 741 F.3d 635, 644 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).

## DISPUTED FACTS

In their Motion to Dismiss, Defendants repeat Mr. Holguin's allegations without directly conceding their truth. Mot. to Dismiss 2–3, ECF No. 4. The Court will treat as undisputed those factual statements made by Mr. Holguin that are neither directly nor indirectly contradicted by Defendants.

Mr. Holguin was pulled over by the Tigua Tribal Police Department. Pl.'s Orig. Pet. 4, ECF No. 1-1; Mot. to Dismiss 2, ECF No. 4. Shortly after the stop, officers of the TPPD arrived at his house and left a citation on his doorstep. Pl.'s Orig. Pet. 6–7, ECF No. 1-1; Mot. to Dismiss 2, ECF No. 4. In subsequent weeks, Mr. Holguin received a summons to the tribal court of the Ysleta Del Sur Pueblo and, after he did not appear at such court, a notice that he had been found liable for a violation of tribal law. Pl.'s Orig. Pet. 7, ECF No. 1-1; Mot. to Dismiss 2–3,

ECF No. 4. The notice informed Mr. Holguin that he and his car would be immediately seized should he be found on tribal land. Pl.'s Orig. Pet. 7, ECF No. 1-1; Mot. to Dismiss 3, ECF No. 4; Order of the Ysleta Del Sur Pueblo Tribal Court, ECF No. 4-3.

Two factual matters remain in dispute: first, whether the traffic stop occurred on or off the reservation, and second, whether Mr. Holguin is or is not a tribal member. For purposes of both a Rule 12(b)(1) facial challenge and a 12(b)(6) motion to dismiss, the Court must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor." *Lormand*, 565 F.3d at 232; *see also Cell Sci. Sys. Corp.*, 804 Fed. Appx. at 263. Thus the Court will resolve both of these factual disputes in favor of the plaintiff, Mr. Holguin.

**1. The Court Will Assume That The Traffic Stop Occurred Outside the Reservation.**

Mr. Holguin asserts that he was stopped "on a city street intersecting with a Texas state highway." Pl.'s Orig Pet. 4, ECF No. 1-1. More specifically, he states that he was driving on "Texas State Highway 258, known in El Paso, Texas as Socorro Road," in an area *"outside the boundaries of the Ysleta Del Sur Pueblo." Id.* (emphasis added). Defendants state in their Motion, however, that Mr. Holguin's allegations stem from "an unlawful traffic stop *on an Indian reservation.*" Mot. to Dismiss 1, ECF No. 4 (emphasis added). Consistent with such position, they cite case law supporting the proposition that "Defendants have the right to stop non-Indians for traffic violations on the Reservation and to determine their own jurisdiction." *Id.* at 17–18 (citing *State v. Schmuck*, 850 P.2d 1332, 1337 (Wash. 1993); *United States v. Patch*, 114 F.3d 131, 133–34 (9th Cir. 1997)). Further, in their Reply, Defendants assert that Mr. Holguin has not "offer[ed] any proof to the Court that the traffic infraction occurred outside the Reservation," and they assert that the block where the traffic stop occurred was "in the

6

Reservation." Reply 3–4, ECF No. 15. Defendants also offer a printout of a map showing that the relevant road "traverses through the Reservation" and is thus "in Indian Country." *Id.* at 4, 5; *see also* Exhibit F, ECF No. 15-1.

Though Mr. Holguin has not shown definitively that he was pulled over outside the reservation, the Court will, in light of its obligations on this Rule 12 motion, resolve the factual issue in Mr. Holguin's favor and, for the purposes of evaluating Defendants' Motion to Dismiss, take as true his assertion that the traffic stop occurred on land outside of tribal control. *See Lormand*, 565 F.3d at 232; *see also Cell Sci. Sys. Corp.*, 804 Fed. Appx. at 263.

### 2. The Court Will Assume That Mr. Holguin is Not a Tribal Member.

Defendants assert that Mr. Holguin's tribal status is a matter of dispute as he has never "alleg[ed] or prove[n] his non-tribal status." Reply 7, ECF No. 15. However, the summons issued by the Tribal Court to Mr. Holguin and offered to the Court by Defendants records Mr. Holguin's status as a non-Indian. Summons 3, ECF No. 4-2. Mr. Holguin cites multiple cases dealing with the rights of tribes over non-Indians, at least implying that he himself is not an Indian. *See* Resp. 9 (stating case involves stops of "nonmember citizens"), 10 (referring to "non-tribal Plaintiff" and stating that "it is undisputed that [Mr. Holguin] is a non-member"), 11—12 (citing cases about "non-Indian" property owners), ECF No. 12. In his Surreply, Mr. Holguin, rather than directly asserting that he is in fact a non-Indian, instead confusingly states that "[t]he Defendants cannot show that Plaintiff is a tribal member and Plaintiff should not have to prove the nonexistence of a fact." Surreply 6, ECF No. 18.

The Court will resolve the factual dispute in Mr. Holguin's favor (or in what it takes to be Mr. Holguin's favor) and will, for the purposes of this Motion, proceed with its

analysis as though Mr. Holguin is a non-Indian and not a member of the Ysleta Del Sur Pueblo. *See Lormand*, 565 F.3d at 232; *see also Cell Sci. Sys. Corp.*, 804 Fed. Appx. at 263.

## ANALYSIS

Mr. Holguin's complaint posits isolated instances of behavior by specific individuals as the factual basis of his suit. *See* Pl.'s Orig. Pet. 3–6, ECF No. 1-1. Under "Causes of Action," he lists numerous alleged violations of § 1983 against these individuals as well as others not named as Defendants or mentioned elsewhere in the complaint. *Id.* at 6–8 (enumerating causes of action against Defendants as well as against the otherwise-unmentioned "Tatum, Huffaker, and Hobb"). He also asserts that the individuals "conspired" and acted "[i]n furtherance of the conspiracy." *Id.* He adds, in a separate section, an assertion that the Defendants acted with "gross negligence." *Id.* at 9.

Rather than examine each of Mr. Holguin's claims individually, the Court will examine successively his claims against the tribe itself, against the Tribal Police Department, and against individual officers of the Tribal Police.

### 1. Under Rule 12(b)(1), The Court Will Follow the Tribal Exhaustion Doctrine and Dismiss Claims Against Ysleta Del Sur Pueblo and the Tigua Tribal Police Department.

The Court first examines Defendants' arguments for dismissal pursuant to Rule 12(b)(1). *See Ramming*, 281 F.3d at 161. It finds that Defendants have waived their sovereign-immunity defense. The Court will, however, abstain from exercising its jurisdiction over claims against Defendants Ysleta Del Sur Pueblo and the Tigua Tribal Police Department because of the tribal exhaustion doctrine, and it will dismiss claims against those Defendants.

Although Defendants also argue for dismissal under Rule 12(b)(1) because Mr. Holguin failed to meet the statute of limitations, the Court considers that aspect of Defendants'

argument in a separate section because the statute of limitations is not a jurisdictional issue. *See infra* 14–16.

### A. Defendants have waived their sovereign immunity defense by voluntarily removing the case to federal court.

Defendants argue that "[t]he Court should dismiss this case because the Tribe, its police department, and officials have immunity from suit." Mot. to Dismiss 5, ECF No. 4.

"The Tigua Nation enjoys the status of a federally recognized tribe under the Ysleta Del Sur Pueblo and Alabama and Coushatta Indian Tribes of Texas Restoration Act of 1987." *Pais v. Sinclair*, EP-06-CV-137-PRM, 2006 WL 3230035, at \*1 (W.D. Tex. Nov. 2, 2006). Tribes possess "the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *see also* Mot. to Dismiss 5–7, ECF No. 4 (citing multiple cases recognizing the sovereign immunity of Indian tribes).

A tribe loses its immunity "only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). Such waiver occurs when a sovereign "voluntarily agree[s] to remove the case to federal court." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620 (2002) (applying the "voluntary invocation" principle to claims for which defendant has already waived its sovereign immunity in its own courts); *see also Meyers ex rel. Benzing v. Tex.*, 410 F.3d 236, 249 (5th Cir. 2005) (holding that the "voluntary invocation principle applies generally in all cases").

Mr. Holguin does not directly respond to Defendants' argument that his suit should be dismissed due to the Defendants' sovereign immunity. *See* Resp., ECF No. 12. However, in discussing the Court's decision not to remand the case to state court, he criticizes Defendants' acts of "removing a case stating this Court has subject matter jurisdiction and

subsequently representing that this Court lacks subject matter jurisdiction." *Id.* at 1. In doing so,

he inadvertently echoes an argument made by the Supreme Court in *Lapides* about the propriety

of allowing a state to claim sovereign immunity after removing a case to federal court:

> It would seem anomalous or inconsistent for a State both (1) to
> invoke federal jurisdiction, thereby contending that the "Judicial
> power of the United States" extends to the case at hand, and (2) to
> claim Eleventh Amendment [i.e., sovereign] immunity, thereby
> denying that the "Judicial power of the United States" extends to the
> case at hand. And a Constitution that permitted States to follow their
> litigation interests by freely asserting both claims in the same case
> could generate seriously unfair results.

*Lapides*, 535 U.S. at 619. The Supreme Court ultimately determined that it would not allow such

an "anomalous" situation, holding that a state's removal of a case to federal court constituted a

waiver of its sovereign immunity, and articulating a "clear" rule that "removal is a form of

voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise

valid objection to litigation of a matter . . . in a federal forum." *Id.* at 624. Though the

Supreme Court limited its holding to particular cases involving state law claims, the Fifth Circuit

extended *Lapides* to cover all claims, holding in *Meyers* that "a state waives immunity from

private suits based on federal law claims by removing the case to federal court." *Meyers*, 410

F.3d at 248.

Since Defendants have removed this case from state to federal court, the *Meyers*

case compels the conclusion that they have waived any sovereign-immunity defense. The Fifth

Circuit did allow in *Meyers* that "the Constitution permits a state whose law provides that it

possesses an immunity from liability separate from its immunity from suit to show that its waiver

of one does not affect its enjoyment of the other." *Id.* at 253. However, Defendants do not

indicate, and the Court does not find, that the laws of Ysleta Del Sur Pueblo provide for such

immunity from liability. *See* Mot. to Dismiss 5–8, ECF No. 4; YSLETA DEL SUR PUEBLO CODE

OF LAWS (2000), <https://narf.org/nill/codes/ysletacode/index.html>. Thus, *Meyers*'s conclusion

about the "voluntary invocation principle" determines the Court's conclusion: Defendants cannot

claim the defense of sovereign immunity. *Meyers*, 410 F.3d at 248.

### B. Mr. Holguin must exhaust his tribal remedies before bringing suit against Ysleta Del Sur Pueblo and against the Tigua Tribal Police Department.

Defendants request that this Court "abstain from this case under the tribal

exhaustion doctrine." Mot. to Dismiss 8, ECF No. 4. The Court finds that the tribal exhaustion

doctrine applies to Mr. Holguin's claims against the Ysleta Del Sur Pueblo and the Tigua Tribal

Police Department, and it will dismiss those claims.

Defendants cite two Supreme Court decisions as the source of the tribal

exhaustion doctrine. Mot. to Dismiss 8, ECF No. 4 (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480

U.S. 9 (1987); *Nat'l Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845 (1985)). In *National

Farmers*, the Supreme Court was faced with an "asserted right of freedom from Tribal Court

interference" which implicated the question of "whether a tribal court ha[d] exceeded the lawful

limits of its jurisdiction." *Nat'l Farmers*, 471 U.S. at 853, 857. It determined that "the existence

and extent of a tribal court's jurisdiction . . . require a careful examination of tribal sovereignty"

and that such examination "should be conducted in the first instance in the Tribal Court itself."

*Id.* at 855–56. While the Court based the doctrine primarily in the "policy of supporting tribal

self-government and self-determination," it also noted the ways that the doctrine served the

interests of the federal court system:

> [T]he orderly administration of justice in the federal court will be
> served by allowing a full record to be developed in the Tribal Court
> before either the merits or any question concerning appropriate
> relief is addressed. The risks of the kind of "procedural nightmare"
> that has allegedly developed in this case will be minimized if the
> federal court stays its hand until after the Tribal Court has had a full
> opportunity to determine its own jurisdiction and to rectify any

11

errors it may have made.  Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*Id*. at 856–57 (internal citations omitted).

The Court finds that the heart of Mr. Holguin's claims is an assertion that the Ysleta Del Sur Pueblo and its agencies, specifically the Tigua Tribal Police Department and the Tribal Court, have acted beyond their proper jurisdiction.  He refers in his complaint to "the TPPD's disregard of its jurisdictional boundaries," and he asserts repeatedly in his Response that Defendants acted "outside their territorial jurisdiction." Pl.'s Orig. Pet. 6, ECF No. 1-1; Resp. 3–5, ECF No. 12.  Although he is critical of these entities, he does not base his legal challenge on the inherent legality of the entities or the legitimacy of the laws he is alleged to have broken. Rather, he challenges the application of the laws of the Ysleta Del Sur Pueblo, enforced by the Tribal Court and the Police Department, to himself.  Put another way, he does not challenge the ability of the entities in question to act legally within their "territorial jurisdiction," but instead asserts that those entities have acted outside of that "territorial jurisdiction."

Such an assertion falls squarely within the scope of the tribal exhaustion doctrine. In *National Farmers*, the plaintiffs' "asserted right of freedom from Tribal Court interference" implicated questions about "whether a tribal court ha[d] exceeded the lawful limits of its jurisdiction," which the Supreme Court determined should be answered in the first instance by the tribal court. *Nat'l Farmers*, 471 U.S. at 853, 857.  Mr. Holguin's claims against the Ysleta Del Sur Pueblo and against the Tigua Tribal Police Department do more than merely implicating such questions; they raise those questions directly.  Pl.'s Orig. Pet. 6, ECF No. 1-1; Resp. 3–5, ECF No. 12.  Thus, like the plaintiffs in *National Farmers*, Mr. Holguin must bring his claims to

12

the Tribal Court before he can bring them into federal court. *Nat'l Farmers*, 471 U.S. at 855.

Requiring Mr. Holguin to raise his claims in tribal court will also serve the important interests

enumerated in *National Farmers*. *Id.* at 856–857.

### C. The Court will dismiss the claims against Ysleta Del Sur Pueblo and the Tigua Tribal Police Department rather than remand the action to state court.

When handling a case that has been removed from state to federal court, 28

U.S.C. §1447, which governs "[p]rocedure after removal generally," requires that "[i]f at any

time before final judgment it appears that the district court lacks subject matter jurisdiction, the

case shall be remanded." 28 U.S.C. §1447(c). However, the Supreme Court has stated that "the

exhaustion rule enunciated in *National Farmers Union* [does] not deprive the federal courts of

subject-matter jurisdiction. Exhaustion is required as a matter of comity, not as a jurisdictional

prerequisite." *Iowa Mut. Ins. Co.*, 480 U.S. at 16 n.8. Thus, exercise of the tribal exhaustion rule

does not trigger the § 1447 requirement to remand.

Moreover, remanding this case to state court, rather than allowing the tribal court

to first examine the issues, could undermine the very principles undergirding the tribal abstention

doctrine. It would risk creating the "procedural nightmare" the Supreme Court sought to avoid

in *National Farmers*, and it would not allow the Tribal Court to "determine its own jurisdiction

and to rectify any errors it may have made" and "provide other courts with the benefit of their

expertise in such matters in the event of further judicial review." *Nat'l Farmers*, 471 U.S. at

856–57. In a subsequent decision the Supreme Court further emphasized that "[a]djudication . . .

by any nontribal court . . . infringes upon tribal law-making authority, because tribal courts are

best qualified to interpret and apply tribal law." *Iowa Mut. Ins. Co.*, 480 U.S. at 16.

Thus, Mr. Holguin's claims against the Tigua Tribal Police Department and against Ysleta Del Sur Pueblo will be dismissed under Rule 12(b)(1) because of the tribal exhaustion doctrine.

### 2. Under Rule 12(b)(6), The Court Will Dismiss Mr. Holguin's Suit Against All Individual Police Officers Because He Has Failed to State Any Claim Upon Which Relief Can Be Granted.

Defendants also move to dismiss Mr. Holguin's claims under Rule 12(b)(6). Mot. to Dismiss 1, ECF No. 4. Having declined to exercise its jurisdiction over claims against the Ysleta Del Sur Pueblo and against the Tigua Tribal Police Department, the Court considers Defendants' arguments only as they relate to the claims against the individual officers, including Raul Candelaria, Erika Avila, and the unnamed officers.

The Court will not dismiss Mr. Holguin's claims as violative of the statute of limitations. However, it agrees with Defendants that Mr. Holguin's § 1983 claims should be dismissed, as § 1983 simply does not provide a remedy for individuals whose injuries are caused by individuals acting under color of *tribal*, as distinct from *state*, law. [cite] Mr. Holguin's claim of gross negligence will also be dismissed because it offers only "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

### A. The Court will not dismiss the claims based on the statute of limitations.

Defendants assert that each of Mr. Holguin's claims is subject to and barred by a two-year statute of limitations which expired on January 30, 2021. Mot. to Dismiss 14–16, ECF No. 4. Mr. Holguin responds that "all relevant statutes of limitations were tolled through February 1, 2021 due to the COVID-19 state of emergency in the State of Texas." Resp. 13., ECF No. 12. Additionally, Mr. Holguin states that when the last day of the limitations period falls on a weekend or a holiday, Texas state law provides for an automatic extension of the period to the "next day that the county offices are open for business." *Id.* (citing Tex. Civ. Prac.

14

& Rem. Code § 16.072). Thus, he argues, "because January 30, 2021 was a Saturday . . . [and] the lawsuit was accepted by the district clerk on Monday, February 1, 2021," the suit was timely filed. *Id.*

   The Court considers Defendants' argument about the statute of limitations now as part of its Rule 12(b)(6) analysis, rather than as part of its Rule 12(b)(1) analysis, as the statute of limitations for a § 1983 claim is not a jurisdictional bar. "In recent years, we have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has clearly stated as much." *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015) (internal quotations and alterations omitted). As the Tenth Circuit has stated, "[i]n the context of Section 1983 claims, the requisite clear statement is necessarily missing: Congress did not establish any federal statute of limitations for Section 1983 claims, let alone state that such a deadline would be jurisdictional." *Eyring v. Fondaco*, 667 Fed. Appx. 983, 984 (10th Cir. 2016). Thus, the Court will consider Defendants' statute of limitations argument against the requirements of Rule 12(b)(6).

   Dismissal under Rule 12(b)(6) on the basis of the statute of limitations is appropriate only "where it is evident from the [complaint] that the action is barred and the [complaint] fail[s] to raise some basis for tolling." *Jaso v. The Coca Cola Co.*, 435 Fed. Appx. 346, 351 (5th Cir. 2011) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003)). In other words, dismissal is inappropriate when the plaintiff's "potential response to the affirmative defense of the statute of limitations . . . is not foreclosed by the allegations in the complaint." *Id.* at 353 (internal quotations omitted).

   Here, Mr. Holguin's Response, with its assertion that orders of the Texas Supreme Court extended the applicable statutes of limitations, demonstrates a "potential

response to the affirmative defense of the statute of limitations." Resp. 13, ECF No. 12; *Jaso*, 435 Fed. Appx. at 353. That "potential response" is not "foreclosed by the allegations in the complaint," as the existence of a Texas Supreme Court order purportedly extending the applicable statute of limitations is consistent with the factual assertions made in Mr. Holguin's Complaint. Resp. 13, ECF No. 12; *Jaso*, 435 Fed. Appx. at 353.

Accordingly, the Court will not dismiss Mr. Holguin's § 1983 claims on the basis of the statute of limitations, as the allegations made in the complaint meet the standard required to withstand a Rule 12(b)(6) motion. *See Jaso*, 435 Fed. Appx. at 351.

### B. The Court will dismiss all § 1983 claims against individual officers, as such claims cannot be raised against individuals acting under color of tribal law.

§ 1983 allows individuals to sue for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" which are committed "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. "To state a claim under § 1983, plaintiffs must allege two elements: first, that they were deprived of a right or interest secured by the Constitution and laws of the United States, and second, that the deprivation occurred under color of state law." *Doe v. Rains Cty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Mr. Holguin makes passing, unsupported references to actions performed "under color of state law." Pl.'s Orig. Pet. 1–2 (officials acted "under color of state/tribal law"), 6–8 (officials acting "under color of state law"), ECF No. 1-1. However, his complaint makes clear his acknowledgment that the officials who pulled him over were attempting to enforce tribal law. When Mr. Holguin asserts that the Tribal Police Officer "had no authority to perform a pretextual investigatory stop outside the reservation" and refers to the officer's "pretended

16

authority," he is clearly referring to that officer's authority under tribal law. *Id.* at 4–5. He acknowledges that the "invented violations" for which he was cited are "violations of the 'Tribal Transportation Code'" and that all documents he received from the Tribal Court cited exclusively Tribal codes and laws. *Id.* at 5–6.

These assertions and acknowledgments are ultimately fatal to Mr. Holguin's claim, since § 1983 claim must allege that "a deprivation occurred under color of state law." *Doe*, 66 F.3d at 1406. "When they are enforcing tribal laws or managing tribal affairs, neither tribal officers and agents nor private corporations act under color of state law." *Holtz v. Oneida Airport Hotel Corp.*, 826 Fed. Appx. 573, 575 (7th Cir. 2020), *reh'g denied* (Nov. 10, 2020). For that reason, multiple circuit courts have held that "[a] § 1983 action is unavailable for persons alleging deprivation of constitutional rights under color of tribal law." *Burrell v. Armijo*, 456 F.3d 1159, 1174 (10th Cir. 2006) (quoting *R.J. Williams Co. v. Ft. Belknap Hous. Auth.*, 719 F.2d 979, 982 (9th Cir.1983)) (internal quotations omitted); *see also Delebreau v. Danforth*, 743 Fed. Appx. 43, 45 (7th Cir. 2018) (stating that "Indian tribes . . . are beyond [§ 1983]'s reach"); *Stanko v. Oglala Sioux Tribe*, 916 F.3d 694, 698 (8th Cir. 2019) (affirming dismissal of § 1983 suit because plaintiff alleged that defendants were acting pursuant to tribal authority rather than "under color of state law, as § 1983 requires").

Because the Defendant officers acted at all times under color of tribal law, Mr. Holguin cannot state any claims against them under § 1983. Thus the claims will be dismissed under Rule 12(b)(6).

17

**C. Because Mr. Holguin's cannot state a claim for a violation of § 1983, the Court will also dismiss any conspiracy claims and any custom-or-practice claims.**

Mr. Holguin also alleges that the Defendants "conspired" and acted "in furtherance of a conspiracy." Pl.'s Orig. Pet. 6–8, ECF No. 1-1. Because all conspiracy claims made by Mr. Holguin are brought under § 1983, they can be dismissed for the reasons just stated. However, the conspiracy charges fail for a further reason. A plaintiff must allege facts that "establish . . . a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. No deprivation, no § 1983 conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (internal quotations and citations omitted). Since Mr. Holguin cannot show that any "party to the conspiracy" attempted to deprive him of any right secured by § 1983—since any rights he has asserted are not secured by § 1983—he cannot possibly show a conspiracy to so deprive him. *See id.* Thus his conspiracy claims fail for this further reason.

**D. The Court will dismiss Mr. Holguin's claim of gross negligence due to Mr. Holguin's failure to provide any factual basis for the claim.**

One section of Mr. Holguin's complaint is titled "Gross Negligence." Pl.'s Orig. Pet. 9, ECF No. 1-1. Mr. Holguin asserts in that section that "Defendants [sic] conduct when viewed objectively from its standpoint involved the extreme degree of risk when considering the probability and magnitude of the potential harm it created." *Id.* He also asserts that "Defendants were subjectively aware of the high degree of risk, consciously disregarded that risk, and Plaintiff is therefore entitled to recover exemplary damages because of Defendant's actual subjective awareness, conscious, willful, wanton, and intentional disregard for the rights of others." *Id.*

As a preliminary matter, the Court notes that it has jurisdiction over Mr. Holguin's claim of gross negligence under 28 U.S.C. § 1367, which provides that "in any civil

18

action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Court finds that Mr. Holguin's gross negligence claim is sufficiently closely related to his claims arising under federal law as to "form part of the same case or controversy." *Id.*; *see also* Mem. Op. 2–4, ECF No. 9 (finding that Mr. Holguin's § 1983 provide the basis for jurisdiction under 28 U.S.C. § 1331).

Thus the Court may examine Mr. Holguin's gross negligence for adherence to federal pleading standards. *See Int'l Energy Ventures v. United Energy Grp.*, 818 F.3d 193, 208 (5th Cir. 2016) (incorporating federal pleading standards into Rule 12(b)(6) analysis of a claim based in state law). Those standards require that a complaint have "factual content that allows the court to draw the reasonable inference that the [other side] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Mr. Holguin does not provide any factual basis whatsoever for his assertion that "potential harm" might ensue from Defendants' conduct, that there was any "risk" for Defendants to "consciously disregard[]," or that "the rights of others" were ever in question. *Id.* If the relevant "harm," "risk," and "rights" stem from the alleged violations of § 1983, then this claim should be dismissed because the Court has found that Mr. Holguin has not asserted any rights protected by §1983. *See supra* 16–17. If they grow out of other conduct or other rights, then Mr. Holguin has failed to provide any factual basis for this gross negligence claim. As such, the complaint "offers only labels and conclusions or a formulaic recitation of the elements of a cause of action," and thus it "will not do." *Iqbal*, 556 U.S. at 578 (internal quotations and

19

citations omitted). Mr. Holguin's gross negligence claim will therefore be dismissed pursuant to Rule 12(b)(6). *Id.*

## CONCLUSION

All claims against Ysleta Del Sur Pueblo and the Tigua Tribal Police Department will be dismissed under Rule 12(b)(1) pursuant to the tribal exhaustion doctrine. Claims against all individual officers will be dismissed pursuant to Rule 12(b)(6), as § 1983 is inapplicable to actions taken under color of tribal law. Mr. Holguin's claim of gross negligence is also dismissed pursuant to Rule 12(b)(6) as having insufficient factual support. Thus, all of Mr. Holguin's claims will be dismissed, and Defendants' Motion will be granted in full.

**IT IS HEREBY ORDERED** that the Defendants Ysleta Del Sur Pueblo, et al.'s "Motion to Dismiss Plaintiff's Original Petition," ECF No. 4, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Eduardo Holguin's claims against Ysleta Del Sur Pueblo and against the Tigua Tribal Police Department are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FINALLY ORDERED** that Plaintiff Eduardo Holguin's claims against Raul Candelaria, Erika Avila, and Officers John and Jane Doe are **DISMISSED WITH PREJUDICE**.

SIGNED this ___9___ day of **September 2021**.

_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE